# 26-1674-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

MICHAEL WOLFF,

*Plaintiff-Appellant,*

*v.*

MELANIA TRUMP,

*Defendant-Appellee.*

*On Appeal from the United States District Court*
*for the Southern District of New York*

## BRIEF FOR PLAINTIFF-APPELLANT

David S. Korzenik
MILLER KORZENIK RAYMAN LLP
*Attorneys for Plaintiff-Appellant*
The Paramount Building
1501 Broadway, Suite 2015
New York, New York 10036
212-752-9200

PHP (212) 719-0990
appeals@phpny.com

# TABLE OF CONTENTS


PRELIMINARY STATEMENT....................................................1

JURISDICTIONAL STATEMENT.................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..........................2

STATEMENT OF THE CASE ....................................................3

I. Nature of the Case.................................................... 3

II. The Decision Below. ................................................... 6

STANDARD OF REVIEW........................................................8

SUMMARY OF THE ARGUMENT ..................................................9

ARGUMENT..................................................................13

I. This Removed Case Must Be Remanded Because There Is No Diversity of Citizenship. ................................................ 13

A. Citizenship is presumed to continue absent clear and convincing evidence. It may be challenged in any appropriate manner. ....14

B. The district court's diversity finding was erroneous even absent Mr. Wolff's proper jurisdictional challenge because Mrs. Trump had not shouldered her change in citizenship burden..............18

C. Regardless, Mr. Wolff mounted a proper jurisdictional challenge, and the district court erred by failing to consider it. ..................22

II. The District Court Abused Its Discretion By Taking Supplemental Jurisdiction Over The Affirmative Anti-SLAPP Claim Only To Abstain And Dismiss. ................................................ 26

A. Remand is proper because this action presents a novel issue of state law.........................................................................29

B. The district court's reasoning for declining to remand was undermined by its subsequent abstention and dismissal..........30

III. Remand, Not Dismissal, Should Have Followed Abstention................ 33

A. There is no Florida action to defer to under the doctrinal principles. ....35

B. The distinction between the DJA and the New York declaratory statute is relevant to the analysis. ....39

CONCLUSION .... 40

# TABLE OF AUTHORITIES

**Cases**

*118 E. 60th Owners, Inc. v. Bonner Props., Inc.*,
677 F.2d 200 (2d Cir. 1982) .....40

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
57 F.4th 85 (2d Cir. 2023).....35

*Arista Recs. LLC v. Lime Grp. LLC*,
784 F. Supp. 2d 398 (S.D.N.Y. 2011).....25

*Bellido-Sullivan v. Am. Int'l Grp., Inc.*,
123 F. Supp. 2d 161 (S.D.N.Y. 2000).....25

*Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*,
180 F. Supp. 3d 246 (S.D.N.Y. 2016).....25

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004).....28

*Brillhart v. Excess Ins. Co. of Am.*,
316 U.S. 491 (1942).....8, 13, 34, 40

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943).....36

*Buss ChemTech AG v. PCS Phosphate Co.*,
No. 25-cv-3710 (JGK), 2026 WL 35380 (S.D.N.Y. Jan. 6, 2026).....29, 33

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988).....13, 29, 33

*Catzin v. Thank You & Good Luck Corp.*,
899 F.3d 77 (2d Cir. 2018).....32, 37

*City of Chicago v. Int'l Coll. of Surgeons*,
522 U.S. 156 (1997).....33

*Cooper v. Trs. of Coll. of Holy Cross*,
No. 13 CIV. 8064, 2014 WL 2738545 (S.D.N.Y. June 17, 2014).....27

*Dittmer v. County of Suffolk*,
146 F.3d 113 (2d Cir. 1998).....39

*Eisenberg v. New England Motor Freight, Inc.*,
564 F. Supp. 2d 224 (S.D.N.Y. 2008)...17, 26

*Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*,
544 F.2d 1126 (2d Cir. 1976)...26

*Fed. Trade Comm'n v. Vantage Point Servs., LLC*,
266 F. Supp. 3d 648 (W.D.N.Y. 2017)...25

*Finnegan v. Long Island Power Auth.*,
409 F. Supp. 3d 91 (E.D.N.Y. 2019)...22

*Freeman v. Giuliani*,
No. 24-cv-06563 (LJL), 2024 WL 5239410 (S.D.N.Y. Dec. 27, 2024)...39

*Gannett Fla. Corp. v. Montesano*,
308 So. 2d 599 (Fla. Dist. Ct. App. 1975)...38

*Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*,
697 F.3d 59 (2d Cir. 2012)...10, 28

*Gilman v. BHC Sec., Inc.*,
104 F.3d 1418 (2d Cir. 1997)...6, 12

*Gindel v. Centex Homes*,
267 So. 3d 403 (Fla. Dist. Ct. App. 2018)...38

*Gualandi v. Adams*,
385 F.3d 236 (2d Cir. 2004)...12, 27

*Gutierrez Chacon v. P & S Select Foods, Inc.*,
No. 17 CIV. 1037 (ER), 2019 WL 6170423 (S.D.N.Y. Nov. 19, 2019)...32

*Gutierrez v. Fox*,
141 F.3d 425 (2d Cir. 1998)...21

*Hachamovitch v. DeBuono*,
159 F.3d 687 (2d Cir. 1998)...9

*Hatfill v. Foster*,
415 F. Supp. 2d 353 (S.D.N.Y. 2006)...24

*Heilbut v. Cassava Scis., Inc.*,
778 F. Supp. 3d 551 (S.D.N.Y. 2025)...39

*Herrick Co. v. SCS Commc'ns, Inc.*,
251 F.3d 315 (2d Cir. 2001)..........12, 14

*Kamen v. Am. Tel. & Tel. Co.*,
791 F.2d 1006 (2d Cir. 1986)..........24

*Kanciper v. Suffolk Cnty. Soc'y for the Prevention of Cruelty to Animals, Inc.*,
722 F.3d 88 (2d Cir. 2013)..........9, 12, 29, 33

*Katz v. Goodyear Tire & Rubber Co.*,
737 F.2d 238 (2d Cir. 1984)..........14, 20, 21

*Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*,
633 F. Supp. 2d 77 (S.D.N.Y. 2009)..........21

*Kesner v. Buhl*,
590 F. Supp. 3d 680 (S.D.N.Y. 2022)..........41

*Kheel v. Port of N.Y. Auth.*,
457 F.2d 46 (2d Cir. 1972)..........6

*Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
No. 03 CIV. 10333, 2006 WL 300477 (S.D.N.Y. Feb. 7, 2006)..........22

*Kubin v. Miller*,
801 F. Supp. 1101 (S.D.N.Y. 1992)..........20

*La Luna Enters., Inc. v. CBS Corp.*,
74 F. Supp. 2d 384 (S.D.N.Y. 1999)..........40

*Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*,
No. 19 CIV. 3868, 2020 WL 1503558 (S.D.N.Y. Mar. 30, 2020)..........18, 23

*LeChase Constr. Servs., LLC v. Argonaut Ins. Co.*,
63 F.4th 160 (2d Cir. 2023)..........34

*Lewis v. Rego Co.*,
757 F.2d 66 (3d Cir. 1985)..........26

*Linardos v. Fortuna*,
157 F.3d 945 (2d Cir. 1998)..........19, 24

*Lincoln Benefit Life Co. v. AEI Life, LLC*,
800 F.3d 99 (3d Cir. 2015)..........26

*Luckenbach S.S. Co. v. United States*,
312 F.2d 545 (2d Cir. 1963)....................................................................36

*Lupo v. Hum. Affs. Int'l, Inc.*,
28 F.3d 269 (2d Cir. 1994)......................................................................27

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)....................................................................24

*Mancini v. Personalized Air Conditioning*,
702 So. 2d 1376 (Fla. Dist. Ct. App. 1997)...........................................38

*Monitor Patriot Co. v. Roy*,
401 U.S. 265 (1971).................................................................................11

*Moore v. Betit*,
511 F.2d 1004 (2d Cir. 1975)....................................................................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983).....................................................................................39

*Nat'l Artists Mgmt. Co. v. Weaving*,
769 F. Supp. 1224 (S.D.N.Y. 1991)..................................15, 16, 18, 19, 21

*Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc.*,
12 F.4th 1278 (11th Cir. 2021)...........................................................18, 40

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*,
108 F.3d 17 (2d Cir. 1997)......................................................................39

*Nelson v. City of Rochester*,
492 F. Supp. 2d 282 (W.D.N.Y. 2007)....................................................30

*New York Pub. Interest Rsch. Grp., Inc. v. Carey*,
42 N.Y.2d 527 (1977)..............................................................................41

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
673 F.3d 84 (2d Cir. 2012)...................................................................9, 35

*Oneida Indian Nation of N.Y. v. Madison Cnty.*,
665 F.3d 408 (2d Cir. 2011)....................................................................30

*Palazzo v. Corio*,
232 F.3d 38 (2d Cir. 2000)..........................................12, 14, 15, 20

*Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*,
943 F.3d 613 (2d Cir. 2019)……………………………………………………23

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996)…………………………………………………………..34

*R.G. Barry Corp. v. Mushroom Makers, Inc.*,
612 F.2d 651 (2d Cir. 1979)……………………………………………………24

*R.R. Comm'n of Tex. v. Pullman Co.*,
312 U.S. 496 (1941)…………………………………………………………..36

*Reifer v. Westport Ins. Corp.*,
751 F.3d 129 (3d Cir. 2014)…………………………………………………..35, 40

*Rus, Inc. v. Bay Indus., Inc.*,
322 F. Supp. 2d 302 (S.D.N.Y. 2003)………………………………………………25

*Seabrook v. Jacobson*,
153 F.3d 70 (2d Cir. 1998)…………………………………………………..33

*Stark v. Tryon*,
171 F. Supp. 3d 35 (D. Conn. 2016)…………………………………………..27

*Tojek v. Harris*,
No. 19-CV-1470-LJV-MJR, 2022 WL 976941 (W.D.N.Y. Mar. 31, 2022)……..30

*Trump v. Mail Media, Inc.*,
Index No. 650661/2017 (N.Y. Sup. Ct. N.Y. Cnty.)…………………………...14

*United Food & Com. Workers Union v. CenterMark Props. Meriden Square, Inc.*,
30 F.3d 298 (2d Cir. 1994)…………………………………………..12, 17, 26

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966)…………………………………………………………..31

*Valencia ex rel. Franco v. Lee*,
316 F.3d 299 (2d Cir. 2003)……………………………………………9, 12, 30, 33

*Vill. of Westfield v. Welch's*,
170 F.3d 116 (2d Cir. 1999)……………………………………………………39

*Wachtell v. CVR Energy, Inc.*,
18 F. Supp. 3d 414 (S.D.N.Y. 2014)…………………………………………..15

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)........................................................8, 34, 37

*Youell v. Exxon Corp.*,
74 F.3d 373 (2d Cir. 1996).....................................................35, 37

*Young v. Century House Historical Soc'y*,
117 F. Supp. 2d 277 (N.D.N.Y. 2000)....................................16, 21

**Statutes**

28 U.S.C. § 1291...................................................................2

28 U.S.C. § 1332.....................................................1, 2, 5, 7

28 U.S.C. § 1367..........................................................*passim*

28 U.S.C. § 1404(a)...............................................................5

28 U.S.C. § 1441...............................................................1, 5

28 U.S.C. § 1446...............................................................1, 5

28 U.S.C. § 2201...................................................................3

Fla. Stat. § 770.....................................................3, 4, 37, 38, 41

N.Y. C.P.L.R. 3001.............................................1, 5, 6, 40, 41

N.Y. Civ. Rights Law § 70-a..................................1, 2, 5, 38, 41

N.Y. Civ. Rights Law § 76-a.........................................1, 5, 38, 41

**Rules**

Fed. R. App. P. 4(a)(1)(A).....................................................2

Fed. R. Civ. P. 12(b)...................................................5, 24, 25, 26, 27

Fed. R. Civ. P. 56...........................................................24, 25, 26, 27

**Other Authorities**

Democratic Staff of H. Comm. on the Judiciary, 119th Cong., *The Case Against Donald Trump Emerging in the Epstein Files and DOJ's Desperate Efforts to Cover It Up* (Oct. 2026)........................................................11

Restatement (Second) of Conflict of Laws §§ 11, 12 (Am. L. Inst. 1971)......15

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Michael Wolff commenced this action in the Supreme Court of the State of New York, County of New York (Index No. 163900/2025), asserting (1) a claim for damages, attorneys' fees, and costs under N.Y. Civ. Rights Law § 70-a; (2) a claim for declaratory relief under N.Y. Civ. Rights Law §§ 70-a, 76-a and N.Y. C.P.L.R. 3001; and (3) a further declaration on the non-actionability of Defendant-Appellee Melania Trump's claims. A.14–29.

Mrs. Trump removed the action pursuant to 28 U.S.C. §§ 1441 and 1446, claiming diversity of citizenship as the basis for federal jurisdiction. A.5–12. Mrs. Trump moved to dismiss or transfer, and Mr. Wolff moved to remand. A.49–50, 88–90. The United States District Court for the Southern District of New York (Vyskocil, J.) held that it had subject matter jurisdiction of this action because: (1) the parties are citizens of different states,[1] and (2) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. A.206–22; *see* 28 U.S.C. § 1332(a)(1).

[1] Mr. Wolff pleaded and still maintains that the parties are not diverse.

The district court then found that it had supplemental jurisdiction over the affirmative § 70-a claim. 28 U.S.C. § 1367. A.223–25.

On May 22, 2026, the district court entered an Opinion & Order abstaining and dismissing the action in its entirety, thereby disposing of all claims of all parties and constituting a final decision. A.199–243; *see also* A.244. Mr. Wolff filed a timely notice of appeal on June 18, 2026, pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A). A.245. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred in denying Mr. Wolff's motion to remand by finding that Mrs. Trump carried her burden of establishing Florida citizenship, such that the parties are completely diverse within the meaning of 28 U.S.C. § 1332, or in the alternative, granting Mr. Wolff's request for jurisdictional discovery.

2. Whether the district court abused its discretion in assuming supplemental jurisdiction over Mr. Wolff's affirmative § 70-a claim pursuant to its amount-in-controversy findings, rather than remanding under 28 U.S.C. § 1367(c)(1).

3. Whether the district court erred or otherwise abused its discretion in declining to exercise jurisdiction over all three claims, including Mr. Wolff's affirmative claim for damages, on prudential abstention grounds under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 and then dismissing rather than remanding.

## STATEMENT OF THE CASE

### I. NATURE OF THE CASE.

Mr. Wolff is a veteran journalist. He is the author of twelve works of nonfiction, and a former columnist for *New York Magazine*, *Vanity Fair*, *USA Today*, and *The Hollywood Reporter*. A.18. He reports regularly—including through podcasts recorded two to three times each week for *The Daily Beast*—on the Trump administration and on Jeffrey Epstein, subjects of ongoing public and congressional concern. A.19.

This action arises from an effort to silence that reporting. On October 15, 2025, through her Florida counsel, Mrs. Trump served Mr. Wolff with a letter-notice pursuant to Fla. Stat. § 770.01 (the "770 Notice")—a procedural requirement to initiate a Florida libel action.[2] A.31–35. She demanded that

[2] A § 770.01 notice is no run-of-the-mill threat letter. Section 770.01 identifies the sender as "the plaintiff" and the recipient as "the defendant."

he "immediately retract" and apologize for identified statements referencing Mrs. Trump published by *The Daily Beast* and in videos posted to social media. A.31–33. She threatened to sue him for "over $1 Billion Dollars in damages" if he did not comply. A.35. Mrs. Trump's counsel earlier served a parallel § 770.01 notice on *The Daily Beast*, after which *The Daily Beast* and Spotify removed stories and episodes of his reporting—a concrete suppression of Mr. Wolff's speech emanating from and felt in New York. A.32, 192–96.

Confronted with these § 770.01 notices, Mr. Wolff, through counsel, initiated several phone calls and emails to Mrs. Trump's counsel seeking an early resolution of Mrs. Trump's dispute. After those attempts failed, he initiated this action in the Supreme Court of the State of New York, County of New York, by Verified Complaint seeking: (1) a declaration under N.Y. C.P.L.R. 3001 that the challenged statements are not actionable libel, because they are true, constitute protected opinion, and were not made

---

Fla. Stat. § 770.01 (2025). It provides, in relevant part, that "the plaintiff shall . . . serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory." *Id*. Significantly, it also bears legal consequence for the recipient in its damages provisions. *Id.* § 770.02.

with actual malice; (2) a declaration under New York's anti-SLAPP law, N.Y. Civ. Rights Law §§ 70-a and 76-a; and (3) an affirmative claim for an award of costs, attorneys' fees, and damages under § 70-a. A.14–29. The gravamen of the Complaint is to protect Mr. Wolff's free-speech rights under the New York Constitution, the First Amendment, and New York anti-SLAPP law to preserve his ability to continue reporting on the Trumps and the Epstein matter without the chilling effect of Mrs. Trump's threats. A.15–16.

Rather than answer in the New York state forum, Mrs. Trump removed the action to the United States District Court for the Southern District of New York, claiming diversity of citizenship, 28 U.S.C. §§ 1332, 1441, and 1446, A.5–12, and moved to dismiss under Federal Rules of Civil Procedure 12(b)(2), (5), and (6) or, in the alternative, to transfer the action to the Southern District of Florida under 28 U.S.C. § 1404(a). A.49–74.

Mr. Wolff opposed and cross-moved to remand the action to state court—contending that complete diversity was lacking because Mrs. Trump is and remains a New York citizen, and because the free-speech interests his action seeks to vindicate are intangible and "too speculative" to be reduced to a jurisdictional dollar figure. A.88–90, 96–100, 104; *see*

*Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975); *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 49 (2d Cir. 1972). In the alternative, Mr. Wolff sought discovery on Mrs. Trump's citizenship. A.88–89.

Because removal statutes are strictly construed and all doubts resolved in favor of remand, *see Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1428 (2d Cir. 1997), Mr. Wolff urged that the action be returned to the New York courts best suited to apply New York's anti-SLAPP law and C.P.L.R. 3001. A.97, 104. The district court denied the motion to remand, abstained, and dismissed the action without granting jurisdictional discovery. A.243–44. This appeal follows. A.245.

## II. The Decision Below.

On May 22, 2026, the district court (Vyskocil, J.) issued an Opinion & Order granting the motion to dismiss. A.199–243. The court first addressed subject-matter jurisdiction. It identified two potential defects—lack of complete diversity and Mrs. Trump's argument that there was no justiciable case or controversy. It rejected both. A.202, 204–07.

In the Complaint, Mr. Wolff pleaded that Mrs. Trump was a New York citizen on information and belief of Mrs. Trump's residence at Trump Tower on Fifth Avenue, her ongoing ties to New York in the form of

property ownership, and continuous time spent in the state. A.18. In her Notice of Removal, Mrs. Trump alleged she had changed her citizenship to Florida based on her residence, voter registration, and driver's license. A.8–9. Neither Mrs. Trump nor her counsel submitted any declarations as to citizenship.

Mr. Wolff mounted a factual challenge to these allegations through a declaration of counsel and accompanying exhibits. A.112–31. The district court did not take notice of the jurisdictional facts Mr. Wolff proffered. On Mrs. Trump's Notice of Removal alone, the court denied Mr. Wolff's request for remand or, alternatively, jurisdictional discovery and found that Mrs. Trump had adequately alleged Florida citizenship. A.211–18.

The district court then found that the amount-in-controversy requirement of 28 U.S.C. § 1332 was satisfied by Mrs. Trump's threatened billion-dollar defamation suit as to the declaratory claims. A.219–21. It determined that Mr. Wolff's affirmative claim was too speculative for valuation, but took supplemental jurisdiction over it on the basis of a "common nucleus of operative fact" rather than remand under 28 U.S.C. § 1367. A.222–25.

Next, although it found it had subject-matter jurisdiction and discretionarily assumed supplemental jurisdiction instead of remanding, the court declined to exercise it. Invoking the abstention principles of *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), and *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), the court characterized the dispute as, "at bottom," an ordinary "speech-tort" case that should be litigated in the "traditional" posture. A.203. In doing so, it faulted Mr. Wolff for "gamesmanship" and expressed doubt as to the affirmative nature of § 70-a. A.199, 236–38. The court determined that Mr. Wolff would have to instead wait to see "if and when" Mrs. Trump sued him for defamation, and on that ground dismissed the Complaint. A.203, 243.

## STANDARD OF REVIEW

This Court reviews a district court's subject matter jurisdiction determination *de novo*. *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998). A district court's decision to exercise or decline supplemental jurisdiction under 28 U.S.C. § 1367 is reviewed under an abuse of discretion standard. *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).

A district court's refusal to exercise declaratory discretion under the Declaratory Judgment Act is also reviewed for abuse of discretion. *Kanciper*

*v. Suffolk Cnty. Soc'y for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 91 (2d Cir. 2013). "A district court abuses its discretion if it bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 99 (2d Cir. 2012). Contrary to the usually deferential posture of this standard, in the abstention context, it is "somewhat rigorous…because [the Court is] considering an exception to a court's normal duty to adjudicate a controversy properly before it." *Kanciper*, 722 F.3d at 91. However, the Court's legal determinations within a declaratory action are reviewed *de novo. See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.,* 697 F.3d 59, 64 (2d Cir. 2012).

## SUMMARY OF THE ARGUMENT

The overarching question before this Court is simple: whether the district court should have remanded this action. But this is colored by the net sum of the district court's ruling. Its determination of the otherwise quotidian procedural issues, in effect, gags the speech of a journalist on matters of utmost public concern. In a case concerning state law enacted to prevent this very outcome, this must be considered.

Mrs. Trump is not a public official, yet this action unavoidably implicates the public's entitlement to information about its government. The speech being suppressed concerns the extent of the *sitting* President and First Lady's relationship with child sex offender and human trafficker Jeffrey Epstein. This issue has been the subject of investigation and reporting from NPR, the BBC, PBS News and, most recently, the Democratic House Judiciary Committee, which released a report substantiating several of the statements at issue.[3]

Over a half-century ago, the Supreme Court wisely held that a public official having a "charge of criminal conduct, no matter how remote in time and place, can never be irrelevant" to the public interest. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 277 (1971). The conduct in question was bootlegging. The extent of the presidential couple's knowledge of, connection to, or even involvement in Jeffrey Epstein's crimes reaches a level of public interest far

---

[3] Democratic Staff of H. Comm. on the Judiciary, 119th Cong., *The Case Against Donald Trump Emerging in the Epstein Files and DOJ's Desperate Efforts to Cover It Up* (Oct. 2026), https://democrats-judiciary.house.gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/2026-10.hjc-dems-staff-report-epstein-and-trump.pdf.

beyond this. And where the executive branch has already editorialized what information the American people can access on this issue, the use of a civil threat to do the same is all the more dire.

Against that backdrop, and supported by the following law, Mr. Wolff respectfully asks that this Court remand on any of three grounds: (1) lack of diversity jurisdiction; (2) improper exercise of supplemental jurisdiction; or (3) doctrinal abstention principles.

*First,* there is no diversity. Removal statutes are strictly construed, and all doubts are resolved in favor of remand. *Gilman*, 104 F.3d at 1428. Mrs. Trump had to support her allegation of change in citizenship with clear and convincing evidence. *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–24 (2d Cir. 2001); *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). She offered bare allegations and no declaration. A.8–9. The district court accepted them and disregarded Mr. Wolff's challenge, A.211–17, which needed only to raise doubt "in any appropriate manner." *United Food & Com. Workers Union, Loc. 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Remand, or at least jurisdictional discovery, was required. *See Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004).

*Second,* the district court abused its discretion by keeping the affirmative anti-SLAPP claim. A court may decline supplemental jurisdiction over a claim raising a novel state-law issue. 28 U.S.C. § 1367(c)(1); *Valencia*, 316 F.3d at 305–06. The district court kept the claim, A.223–25, then deemed it "wholly derivative" to abstain, A.236–38. *See Kanciper*, 722 F.3d at 93. This finding, in effect, opined on a question § 1367(c)(1) supports leaving to New York state courts. The district court's subsequent decision to abstain and dismiss also undercuts its choice to keep the claim. It invoked the same principles that support remand under § 1367(c)(1). *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). But it applied them to defer to a Florida suit that cannot result in finality within the meaning of the law. A.203.

*Third,* and relatedly, abstention called for remand, not dismissal. *Wilton/Brillhart* abstention is premised on comity and finality. *See Brillhart*, 316 U.S. at 495. Yet the court deferred to a suit threatened in Florida over an action properly before a New York state court. A.203, 243.

For these reasons, the district court should have remanded the action to state court. In the very least, the district court should have granted jurisdictional discovery as to Mrs. Trump's domicile.

# ARGUMENT

## I. THIS REMOVED CASE MUST BE REMANDED BECAUSE THERE IS NO DIVERSITY OF CITIZENSHIP.

This action may only be entertained pursuant to diversity jurisdiction. The parties must be citizens of different states. Mr. Wolff is a New York citizen. A.18. It is undisputed that Mrs. Trump was also a citizen of New York until at least October 2019.[4] If Mrs. Trump's New York citizenship persisted at the time this action was filed, there is no diversity, and remand is warranted.

As the removing party, the burden was on Mrs. Trump to rebut the presumption that her New York citizenship continues. *See Herrick*, 251 F.3d at 322–24. This requires "clear and convincing evidence" of: (1) intent to give up New York domicile, (2) intent to take up Florida domicile, and (3) actual residence in Florida. *Palazzo*, 232 F.3d at 42 (citing *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243-44 (2d Cir. 1984)). These showings were

---

[4] Mrs. Trump alleges a change in citizenship. *See* A.98 (citing *Melania Trump v. Mail Media, Inc.*, Index No. 650661/2017, Doc. No. 2, ¶ 5 (N.Y. Sup. Ct. N.Y. Cnty.), in which Mrs. Trump alleged New York citizenship); A.8 (Notice of Removal ¶ 13(a)) ("Since October 30, 2019, Mrs. Trump has designated her primary residence as Mar-a-Lago").

not made, but the district court still found diversity jurisdiction—just to then decline to exercise it. A.206–18, 226–43.

Layered over this, "when considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." *Wachtell v. CVR Energy, Inc.,* 18 F. Supp. 3d 414, 423 (S.D.N.Y. 2014). In sum, the district court misstated Mrs. Trump's citizenship burden, misapplied the law, and failed to consider the totality of the jurisdictional evidence before it.

### A. Citizenship is presumed to continue absent clear and convincing evidence. It may be challenged in any appropriate manner.

Citizenship is determined by domicile. A person can have only one domicile at any time. See *Palazzo*, 232 F.3d at 42. Domicile is the "center of [one's] domestic, social and civil life"—not just one's residence. *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991) (citing Restatement (Second) of Conflict of Laws §§ 11, 12 (1971)). It is presumed to persist. Therefore, an alleged change in domicile triggers a heightened burden. *Palazzo*, 232 F.3d at 42. The burdened party must show—by clear and convincing evidence—"the required intent to give up the old and take

up the new [domicile], coupled with an actual acquisition of a residence in the new locality." *Id.* (cleaned up).

There is a broad range of objective indicia of intent.[5] But "no single factor is conclusive," and the "totality of the evidence approach is called for[.]" *Nat'l Artists*, 769 F. Supp. at 1228. This is especially relevant when the party has multiple residences. Here, "intent" must especially predominate over residence. *See id.* at 1227. And while a "party's own statements concerning [her] intentions are relevant … they are of slight weight when they come into conflict with other facts that tend to disclose a contrary intent." *Id.* at 1228 (citation omitted).

A citizenship challenge requires the burdened party to support its jurisdictional allegations with "competent proof." This challenge can be made in "*any appropriate* manner." *United Food,* 30 F.3d at 301 (internal citations and alterations omitted). This is facially nonprescriptive. *Id.* Both a

[5] Some "objective indicators of a party's intent include current residence; voting registration; personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; and payment of taxes." *Young v. Century House Historical Soc'*y, 117 F. Supp. 2d 277, 280 (N.D.N.Y. 2000) (cleaned up).

motion to remand and an affidavit are appropriate and common vehicles for such a challenge. *See, e.g.*, *Eisenberg v. New England Motor Freight*, *Inc.*, 564 F. Supp. 2d 224 (S.D.N.Y. 2008).

The Complaint alleged that Mrs. Trump is a New York citizen, with New York residence, New York property, and "numerous ongoing ties" to New York. A.18. Mrs. Trump's Notice of Removal then alleged that she changed her citizenship in October 2019 to Florida, based on primary residence at Mar-a-Lago, Florida voter registration and participation, a Florida license, and spending "most of her time" in Florida when not on official duties. A.8–9.[6]

Mr. Wolff challenged this in his motion to remand, the accompanying 13-page Korzenik Declaration and its two exhibits (collectively, the "Remand Papers"). *See* A.96–100, 112–31. He noted the presumption of continued citizenship absent "clear and convincing evidence,"A.98 (citing *Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, No. 19 CIV. 3868, 2020 WL 1503558, at *3 (S.D.N.Y. Mar. 30, 2020), *aff'd sub nom.* 830 F. App'x 50 (2d

---

[6] Before Mr. Wolff had moved to remand, the district court described this limited offering as "cataloguing facts tha*t establis*h Defendant's Florida citizenship." A.48.

Cir. 2020)); and Mrs. Trump's previous New York citizenship allegations, A.98.

He then provided a detailed factual refutation of Mrs. Trump's citizenship allegations, which included reliable news articles and official documents. This included: Mrs. Trump's continued ownership of a New York residence purchased in January 2016, A.113 (Korzenik Decl. ¶¶ 5-6); that her publisher, lawyer, assistant, hair stylist, event planner, interior decorator, "senior advisor," manicurist, and dentist are in New York, A.115–17 (¶¶ 16-17); her active New York business entities, A.113, 125–27 (¶ 6 & Ex. A); her personal and familial ties in New York, A.114–17 (¶¶ 10-15, 17); and her own statements of New York domiciliary intent. A.117–18 (¶¶ 18-20). *See Nat'l Artists*, 769 F. Supp. at 1228 (listing factors like "whether the person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears), affiliations with social organizations, and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc."); *Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc.*, 12 F.4th 1278, 1284 (11th Cir. 2021) (taking into account family location).

The district court disregarded Mr. Wolff's Remand Papers in their

entirety. *See* A.213–14. Relying on this sweeping excision, it determined that "there is no factual dispute" and no "doubt [as to Mrs. Trump's citizenship] sufficient to warrant remand to state court" nor any basis for jurisdictional discovery. A.202–03, 214. In reaching this conclusion, the district court also initially—without applying the proper burden—found that Mrs. Trump had met her burden of establishing "actual residence and intent to remain [in Florida]." A.211–12 (citing *Nat'l Artists*, 769 F. Supp. at 1227–28) (cleaned up).

Only later did the district court note the presumption against changed citizenship and the burden attached to it. A.217–18 (citing *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998)). The opinion then merely repeated its finding that Mrs. Trump had "more than adequately shouldered [this] burden" on the same perfunctory and conclusory allegations of "residence and intent to remain in Florida." A.217.

### B. The district court's diversity finding was erroneous even absent Mr. Wolff's proper jurisdictional challenge because Mrs. Trump had not shouldered her change in citizenship burden.

The district court's error is manifold. First, it applied the wrong burden to Mrs. Trump's scant citizenship allegations. Next, it improperly

excised Mr. Wolff's jurisdictional challenge. Finally, it ignored the law that all doubts are to be resolved in favor of remand. While Mr. Wolff argues that the district court was bound to notice the facts in his Remand Papers, he also contends that—even without them—the record still warranted remand.

Intent encompasses both "intent to give up the old ***and*** take up the new" domicile. *Palazzo*, 232 F.3d at 42 (citing *Katz*, 737 F.2d at 243-44) (emphasis added)*; see also Kubin v. Miller*, 801 F. Supp. 1101, 1111 (S.D.N.Y. 1992) (finding that a party with extensive Connecticut connections—a renovated home, a Connecticut driver's license, car registration, tax filings, and more than half the year spent there—nonetheless "failed to sustain the burden of proving that his domicile changed from New York to Connecticut," given his strong continuing New York ties). The district court failed to consider Mrs. Trump's intent—or lack thereof—to "give up" her "old" New York domicile *and* "take up [her] new [alleged] domicile." *See Katz*, 737 F.2d at 243-44.

Mrs. Trump's only supposed intent allegation is that when she is not on official duties, she spends "***most*** of her time" in Florida (without even specifying the division of time between her homes). A.9. This is

insufficient, particularly for an individual with multiple residences such as herself. *See Nat'l Artists*, 769 F. Supp. at 1227. Intent is not simply extrapolated from where one "spends the majority of [her] time." *Young*, 117 F. Supp. 2d at 281. Instead, it concerns one's "state of mind to remain or return to a certain place." *Id.* Mrs. Trump's division of time between her multiple residences and the White House does not prove intent by clear and convincing evidence. *See also Gutierrez v. Fox*, 141 F.3d 425, 429 (2d Cir. 1998) (reviewing both deposition questions and interrogatories on the issue of presence with intent to remain indefinitely).

Likewise, while voter registration, voter participation, and a driver's license are often indicia of intent, this must be viewed in light of the "totality of the evidence." *Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009), *aff'd*, 406 F. App'x 507 (2d Cir. 2010) (considering, amongst other factors, how permanent a living arrangement appears, the location of one's doctors, lawyers, accountants, dentists, bank accounts, membership in organizations and associations, places of employment or business and payment of taxes). The totality of the evidence here includes (1) the multiple residences from which Mrs. Trump may elect to register to vote or obtain a driver's license; (2) the minimal

criteria for doing so, A.121–22; and (3) that Mrs. Trump is the First Lady of the United States, as she also was in October 2019 and when this action was commenced. *See* A.5.

The choice of which address to use for voting purposes carries different implications in this unique political and residence context. *Finnegan v. Long Island Power Auth.*, 409 F. Supp. 3d 91, 96 (E.D.N.Y. 2019) (evidence of more than one residence requires review of party's intent, which cannot be deduced from "self-serving declarations"). And changes that one makes for "convenience" in a temporary job or working condition, without more, do not demonstrate a change in domicile. *Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 03 CIV. 10333, 2006 WL 300477, at *2 (S.D.N.Y. Feb. 7, 2006) (maintaining civil and social ties in New Jersey despite physically moving, renting a house, and moving furniture, dishes, clothing and a car to another state for work did not change domicile).

Cumulatively, this context diminishes the objectivity of the domiciliary indicia that may well be dispositive for an ordinary person. Mrs. Trump's cursory offering (with no accompanying affidavit, no less), A.8–9, does "not allow … determin[ation] [of her] citizenship." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617-

19 (2d Cir. 2019). And "[a] district court may not assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence." *Id.* at 618. Thus, even absent Mr. Wolff's challenge, the district court had two options: remand or, at the very least, order jurisdictional discovery. *Id.* at 619.

### C. Regardless, Mr. Wolff mounted a proper jurisdictional challenge, and the district court erred by failing to consider it.

The district court should not have relied on Mrs. Trump's allegations alone when "they come into conflict with other facts that tend to disclose a contrary intent." *See Moskowitz*, 2020 WL 1503558, at *5. Specifically, Mr. Wolff mounted a detailed factual challenge to Mrs. Trump's citizenship allegations, in addition to those alleged in the Complaint. This created a dispute requiring Mrs. Trump to provide "competent proof" of her alleged change in domicile. *Linardos*, 157 F.3d at 947. Despite this, the district court disregarded Mr. Wolff's Remand Papers wholesale. A.213.

This omission runs afoul of this Circuit's law. Since this Court is in "as good a position as the district court to read and interpret" the jurisdictional evidence on the record, A.112–31, it may resolve Mr. Wolff's

motion to remand on this appeal. *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979).

Mr. Wolff's contrary evidence spanned multiple papers, offered a myriad of facts, and relied on reputable sources. A.91–131. This is more than appropriate in an action that already favors remand. Even under the related Rule 12(b)(1) body of law, a motion to dismiss "may refer to evidence outside the pleadings," *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000), which "may be presented by affidavit or otherwise." *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

The same is true under Fed. R. Civ. P. 56. *Id.* Under Rule 56, evidence may properly include news articles or official documents. *See, e.g., Hatfill v. Foster*, 415 F. Supp. 2d 353, 361 (S.D.N.Y. 2006) (relying on news article to disprove change in domicile). An attorney declaration is a proper vehicle to put such evidence before the court. *See, e.g., Fed. Trade Comm'n v. Vantage Point Servs.*, LLC, 266 F. Supp. 3d 648, 654 (W.D.N.Y. 2017).

While Rules 12 and 56 permit a district court to excise portions of a declaration containing "conclusory or hearsay statements" or those "not made on personal knowledge," *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 180 F. Supp. 3d 246, 253 (S.D.N.Y. 2016), case

law does not support the district court's wholesale disregard of Mr. Wolff's attorney declaration. *See, e.g.*, *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 416 (S.D.N.Y. 2011) (refusing to strike an entire declaration on the basis of some statements being privileged); *Rus, Inc. v. Bay Indus., Inc.*, 322 F. Supp. 2d 302, 307 (S.D.N.Y. 2003) (disregarding portions of a declaration); *Vantage Point Servs.*, 266 F. Supp. 3d at 654 (considering the portions of a declaration introducing exhibits and disregarding "legal argument" and "factual assertions" lacking personal knowledge).

Furthermore, Mr. Wolff did not move under the more stringent mandates of Rules 12(b)(1) or 56. He moved to remand. He is presumed entitled to that remand. *See generally Bellido-Sullivan v. Am. Int'l Grp., Inc.*, 123 F. Supp. 2d 161, 163 (S.D.N.Y. 2000).

Indeed, unlike a party moving under Rules 12(b)(1) or 56, Mr. Wolff has no burden here. *Eisenberg*, 564 F. Supp. 2d at 229 ("When a party challenges the removal of an action to federal court, 'the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'") (citation omitted). While Rule 12(b)(1) and 56 case law are relevant, neither displaces the removal standard. *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976). His challenge

merely had to cast doubt in "any appropriate manner." *United Food*, 30 F.3d at 301.

Likewise, while this Court has not directly weighed in, its sister circuits have clarified that diversity allegations made on information and belief are adequate at the pleading stage. *See, e.g.*, *Lewis v. Rego Co.*, 757 F.2d 66, 68–69 (3d Cir. 1985). In fact, the Third Circuit has observed in the 12(b)(1) context that "it serves little purpose to require the plaintiff to allege the defendant's precise state of citizenship, especially when this would entail a difficult factual investigation prior to filing." *Lincoln Benefit Life Co. v. AEI Life*, LLC, 800 F.3d 99, 107–08 (3d Cir. 2015).

Here, it makes little sense to burden Mr. Wolff—the party with the citizenship presumption in his favor—with an investigation of jurisdictional facts "peculiarly" within Mrs. Trump's knowledge. *Gualandi*, 385 F.3d at 244. Of course, a citizenship challenge requires some basis for doubt—which Mr. Wolff supplies. But the district court should not burden an unburdened party with a pre-discovery fact-finding expedition. *See, e.g.*, *Cooper v. Trs. of Coll. of Holy Cross*, No. 13 CIV. 8064, 2014 WL 2738545, at *1 (S.D.N.Y. June 17, 2014) (Failla, J.) (accepting jurisdictional allegations

made in a complaint upon information and belief in resolving a motion to remand).

The district court improperly used Rule 56 and 12(b)(1) case law to justify its wholesale disregard of Mr. Wolff's Remand Papers and to acquiesce in Mrs. Trump's refusal to meet her citizenship burden. A.212–14. The net sum is tantamount to imposing a burden on Mr. Wolff that is contrary to the law and that also belies "the congressional intent to restrict federal court jurisdiction [in removed cases], as well as the importance of preserving the independence of state governments." *Stark v. Tryon*, 171 F. Supp. 3d 35, 41 (D. Conn. 2016) (citing *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). Mr. Wolff mounted a suitable jurisdictional challenge—and the district court had to remand, or, at the very least, order jurisdictional discovery. *See Gualandi*, 385 F.3d at 244.

## II. THE DISTRICT COURT ABUSED ITS DISCRETION BY TAKING SUPPLEMENTAL JURISDICTION OVER THE AFFIRMATIVE ANTI-SLAPP CLAIM ONLY TO ABSTAIN AND DISMISS.

The district court abused its discretion by assuming supplemental jurisdiction over Mr. Wolff's affirmative anti-SLAPP claim—only to dismiss this action. A.28–29 (Compl. ¶¶ 29–31).

In declaratory actions "the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Garanti*, 697 F.3d at 68 (quotation omitted). Pursuant to this, the district court measured the amount in controversy for Mr. Wolff's declaratory claims from the $1 billion figure in the 770 Notice. A.221. It then agreed with Mr. Wolff that the affirmative anti-SLAPP claim was "too speculative for any amount in controversy valuation." A.222. Therefore, the court had to exercise supplemental jurisdiction in order to keep this claim in federal court. 28 U.S.C. § 1367; A.223–24. Under § 1367(a), a court has jurisdiction over claims arising from the same "common nucleus of operative fact." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (citation omitted).

But a court "may decline to exercise supplemental jurisdiction" if "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). The district court refused to exercise this discretion—over what it acknowledged was a complex area of New York state law, A.224, only to abstain under a doctrine grounded in the same principles. A.226–43; *infra* Part III; *Cohill*, 484 U.S. at 357 ("The discretion to remand enables district

courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.”).

This was tangled further by the same abstention doctrine being limited to actions for purely declaratory relief. *See Kanciper*, 722 F.3d at 93 (“*Wilton* does not apply where, as here, a plaintiff does not seek purely declaratory relief”). To sidestep this threshold, the district court had to find Mr. Wolff’s affirmative claim for damages “wholly derivative” of his declaratory claims. *Buss ChemTech AG v. PCS Phosphate Co.*, No. 25-cv-3710 (JGK), 2026 WL 35380, at *3 (S.D.N.Y. Jan. 6, 2026). By making this finding, the district court opined on a “novel” New York law while contemporaneously purporting not to do so. 28 U.S.C. § 1367(c)(1); A.224, 236–38.

Had the district court simply remanded under § 1367(c)(1) it could have avoided this complexity. *See Nelson v. City of Rochester,* 492 F. Supp. 2d 282, 289 (W.D.N.Y. 2007) (remanding *both* pendent state-law claims and non-pendent claims to the extent they concerned state law). It abused its discretion by failing to do so.

### A. Remand is proper because this action presents a novel issue of state law.

While the "novel or complex issue of state law" exception "is a doctrine of discretion[,]" this discretion "is not boundless." *Valencia*, 316 F.3d at 305. A district court may abuse its discretion by exercising supplemental jurisdiction over "claims involv[ing] issues of state law that [are] unsettled[.]" *Id.* at 306 (collecting cases); *see also Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011) (deference "is especially appropriate where the pendent claims present novel or unsettled questions of state law"). Overall, comity weighs heavily in favor of declining to exercise supplemental jurisdiction. *Tojek v. Harris*, No. 19-CV-1470-LJV-MJR, 2022 WL 976941, at *3 (W.D.N.Y. Mar. 31, 2022) (finding comity weighed toward deference to New York state court in a defamation case concerning "unsettled issues of state law").

Here, the district court recognized that Mr. Wolff's claims may "raise[] a novel or complex issue of State law." *See generally* A.224. Regardless, it opined that remanding only the affirmative claim would split the case along "parallel tracks," and that supplemental jurisdiction over related claims is "mandatory." A.224–25. But an action dismissed in

entirety cannot be split along "parallel tracks." And this very pitfall is avoided by remand under § 1367(c)(1), followed by remand or stay on the declaratory counts.

Likewise, other § 1367 exceptions to exercising supplemental jurisdiction are relevant. Under § 1367(c)(2)-(3), a district court may decline to exercise supplemental jurisdiction if the "court has dismissed all claims over which it has original jurisdiction" or where the supplemental claim "predominates" over the others. This case purely concerns state law, and as the remaining claims are declaratory, the affirmative claim "predominates." *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) (listing the factors for analyzing predominance as "proof, [] the scope of the issues raised, or [] the comprehensiveness of the remedy sought").

### B. The district court's reasoning for declining to remand was undermined by its subsequent abstention and dismissal.

Next, the district court added, in a footnote, that partial remand had not been briefed, and thus this Court's decision in *Catzin* warranted assuming jurisdiction. A.224 n.9 (citing *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 84 (2d Cir. 2018)). But *Catzin* is distinguishable. It was

not a removed case, and there "the District Court sua sponte declined to exercise supplemental jurisdiction one day before the final pretrial conference and a week before the scheduled trial date without affording either party an opportunity to be heard on the issue." *Gutierrez Chacon v. P & S Select Foods, Inc.*, No. 17 CIV. 1037 (ER), 2019 WL 6170423, at *6 (S.D.N.Y. Nov. 19, 2019).

Here, the parties have extensively briefed the issue of remand, even if not partial remand, and the ultimate abstention and dismissal was itself *sua sponte*. *Catzin*, 899 F.3d at 82 ("[s]ua sponte dismissals without notice and an opportunity to be heard 'deviate from the traditions of the adversarial system' and 'tend to produce the very effect they seek to avoid—a waste of judicial resources—by leading to appeals and remands.'") (citation omitted).

The abstention-driven purpose of assuming supplemental jurisdiction then further compounds this error. A court may abstain under *Wilton/Brillhart* only if the claims seek purely declaratory relief. *Kanciper*, 722 F.3d at 93. The one exception is for claims for damages that are "wholly derivative" of the declaratory claims. *Buss ChemTech*, 2026 WL 35380, at *3. Damages claims are "wholly derivative" if they would not

"remain viable" once the plaintiff "los[es] on its declaratory-judgment requests." *Id.*

The district court went to great lengths to determine that the claim was "wholly derivative" so that it could abstain and dismiss this action. A.236–38. But whether Mr. Wolff's affirmative claim can stand on its own is itself a “novel” question of a “novel” New York law that goes to the merits of this action. A.224; *Valencia*, 316 F.3d at 306 (quoting *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998)). Plus, the issues underlying the abstention also call for reexamination of supplemental jurisdiction, which should be reexamined "at every stage of the litigation." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Cohill*, 484 U.S. at 350).

Overall, the district court’s complex procedural sequence defies good practice in this Circuit and doctrine. This complexity could have been avoided by simply remanding under § 1367(c)(1) and then abstaining and staying or remanding the declaratory claims. It abused its discretion by failing to do either and forfeiting another proper opportunity to remand.

## III. Remand, Not Dismissal, Should Have Followed Abstention.

The district court should have remanded on the basis of incomplete diversity and 28 U.S.C. § 1367(c)(1). But if diversity exists and Mr. Wolff's affirmative anti-SLAPP claim was wholly derivative, the underlying "abstention principles" also authorized—and counseled—remand. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996); *see generally LeChase Constr. Servs., LLC v. Argonaut Ins. Co.*, 63 F.4th 160 (2d Cir. 2023) (discussing abstention-based remand).

The abstention doctrine relied upon rests on the principle that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart*, 316 U.S. at 495; *see also Wilton*, 515 U.S. at 283. But this enshrined comity is tempered by ensuring the state proceeding provides finality.[7] *Youell v. Exxon Corp.*, 74 F.3d 373, 376 (2d Cir. 1996) (considering "whether the claims of all parties in interest can satisfactorily be adjudicated in [the] state proceeding").

---

[7] The reverse is also true: "If there is any substantial doubt as to" the adequacy of parallel state-court litigation for completely and promptly resolving the issues between the parties, it is "a serious abuse of discretion." *Niagara Mohaw*k, 673 F.3d at 103.

More broadly, district courts in this Circuit are required to weigh six factors "to the extent they are relevant" as well as other considerations bearing on "practicality and wise judicial administration."[8] *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023). Of the six, existence of a state court proceeding "militate[s] significantly in favor of declining jurisdiction." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 144-45 (3d Cir. 2014). Here, the district court facially yielded to this principle while producing an outcome that eschews it because it deferred to the wrong state. A.203, 239–43. New York Supreme Court was initially seized of the case under its own law. A.14. Instead, the district court deferred to an only hypothetical Florida proceeding. A.203. Consequently, Mr. Wolff's speech hovers in the balance of a billion-dollar threat—if and until—Mrs. Trump elects to file suit. A.35. This is the very type of harm declaratory discretion

---

[8] The factors are: "(1) 'whether the [declaratory] judgment [sought] will serve a useful purpose in clarifying or settling the legal issues involved'; (2) 'whether [such] a judgment would finalize the controversy and offer relief from uncertainty'; (3) 'whether the proposed remedy is being used merely for procedural fencing or a race to res judicata'; (4) 'whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court'; (5) 'whether there is a better or more effective remedy'; and (6) whether concerns for 'judicial efficiency' and 'judicial economy' favor declining to exercise jurisdiction." (citation omitted).

should prevent. *See Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963) ("The purpose of the declaratory remedy is to 'avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.'") (citation omitted).

### A. There is no Florida action to defer to under the doctrinal principles.

Like other types of abstention,[9] central to *Wilton/Brillhart* is whether the action will "improperly encroach on the domain of a state or foreign court." This is tempered by considering "whether the claims of all parties in interest can satisfactorily be adjudicated in [the] state proceeding." *Youell*, 74 F.3d at 376 (cleaned up). To resolve this tension, a court must "examine the scope of the pending state court proceeding and the nature of defenses open there." *Wilton,* 515 U.S. at 283.

Here, the district court contorted Mr. Wolff's argument that the 770 Notice started a New York SLAPP to shoehorn its deferential analysis to a Florida proceeding with *zero* guarantee of finality. While, in the process,

[9] *See, e.g., R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

sardonically commenting that Mr. Wolff's affirmative posture is "vague, self-serving, and confused" and "abusively presented" and is therefore "gamesmanship" and "textbook bad-faith forum shopping." A.199, 227, 235, 239. *See Catzin*, 899 F.3d at 84 (the "District Court's error in declining to retain supplemental jurisdiction was exacerbated by its belief that plaintiffs were forum shopping[.]").

Despite this asperity, the scope of a § 770.01 notice under abstention principles and the New York anti-SLAPP law are not interchangeable. Just because a § 770.01 notice fits the broad mandate of New York anti-SLAPP law[10] does not mean it somehow guarantees some resolution such that a court defer to it. Even under Florida case law, terms like "action" can have "separate and distinct definitions" under different statutes. *Gindel v. Centex Homes*, 267 So. 3d 403, 407–09 (Fla. Dist. Ct. App. 2018). New York anti-SLAPP law supplies relief to the target of "any lawsuit, cause of action, cross-claim, counterclaim, or other judicial pleading or filing requesting relief" that has been "commenced or continued." N.Y. Civ. Rights Law §§ 76-a(1)(a)-(b), 70-a.

---

[10] Of note, § 770.01 also refers to a notice recipient as a "defendant" and a notice sender as a "plaintiff."

Issuance of a § 770.01 notice is a condition precedent to a libel action, which labels the parties as "plaintiff" and "defendant," and has legal consequences for both.[11] Even if it does not "commence" a libel action, a § 770.01 notice is a "commenced" "judicial pleading or filing." *Id.* So, upon receiving the 770 Notice, Mr. Wolff was entitled to bring this "affirmative[]" and "substantive" action. *See, e.g., Heilbut v. Cassava Scis., Inc.,* 778 F. Supp. 3d 551, 569 (S.D.N.Y. 2025) ("limiting this cause of action to only current defendants would encourage circumvention of the statute's aims by allowing SLAPP plaintiffs to dismiss their frivolous suits before defendants could exercise the substantive rights afforded to them by the Legislature[.]"*)*. But this condition precedent does not guarantee adjudication.

Further, deferential "priority" is not measured by who filed first, "but rather in terms of how much progress has been made in the two actions."

---

[11] *See also Mancini v. Personalized Air Conditioning,* 702 So. 2d 1376, 1377 (Fla. Dist. Ct. App. 1997) ("Section 770.01, the notice provision, and section 770.02, the retraction provision, grant valuable rights by allowing certain defendants in defamation actions to avoid punitive damages by the timely publication of a correction, apology or retraction"); *Gannett Fla. Corp. v. Montesan*o, 308 So. 2d 599, 600 (Fla. Dist. Ct. App. 1975) (finding the § 770.01 notice at issue "insufficient to sustain the commencement of the action").

*Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 21 (1983)). The Florida "action" is a threat under Florida procedural law to amplify its SLAPP purpose.[12] A.31–35. This New York action is a removed case, ripe for remand, and built on New York law. A.5, 14–29. There is no Florida proceeding to defer to. This deference "[g]ratuitous[ly] interferes with the orderly and comprehensive disposition of a state court litigation.[13] *Brillhart*, 316 U.S. at 495.

[12] Some district courts in this Circuit have been unsure if *Wilton-Brillhart* abstention requires a parallel state proceeding within the stringent meaning supplied in the *Colorado River* doctrine, under which a removed case is not parallel. *See, e.g., Freeman v. Giuliani*, No. 24-cv-06563 (LJL), 2024 WL 5239410, at *11 (S.D.N.Y. Dec. 27, 2024); *see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997) (a parallel proceeding is one where there is identity of parties and the issues and relief sought are the same); *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) (citation omitted). Other circuits have dealt with this question directly and found that a stringent definition of a "parallel proceeding" is not applicable under "substantial discretion" the DJA affords. *See generally Nat'l Tr. Ins. Co.*, 12 F.4th at 1284; *Reifer*, 751 F.3d at 143–45.

[13] It is worth noting that, should Florida defamation law need to be analyzed, courts in this state regularly do so. *See, e.g., La Luna Enters., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 389 (S.D.N.Y. 1999) (applying Florida defamation law to claims against a New York broadcaster). Applying another state's settled tort law is different to construing the affirmative bounds of a novel anti-SLAPP statute.

## B. The distinction between the DJA and the New York declaratory statute is relevant to the analysis.

The distinction between the DJA and N.Y. C.P.L.R. 3001 also bears on this issue. *See 118 E. 60th Owners, Inc. v. Bonner Props., Inc.*, 677 F.2d 200, 204-05 (2d Cir. 1982) (finding that the Declaratory Judgment Act could not permit a result in conflict with procedural aspects of New York substantive state law). C.P.L.R. 3001 permits declarations of rights in a justiciable controversy "whether or not further relief is or could be claimed." *See New York Pub. Interest Rsch. Grp., Inc. v. Carey*, 42 N.Y.2d 527, 530–31 (1977). New York's anti-SLAPP law also creates both substantial and procedural protections for speech on matters of public interest. N.Y. Civ. Rights Law §§ 70-a, 76-a; *Kesner v. Buhl,* 590 F. Supp. 3d 680, 701 (S.D.N.Y. 2022), *aff'd Kesner v. Dow Jones & Co.,* No. 22-875, 2023 WL 4072929 (2d Cir. June 20, 2023).

The district court believed it "need not address" Mr. Wolff's C.P.L.R. 3001 arguments because the DJA supplied the federal procedural mechanism. A.229. It then invoked federal declaratory discretion to dismiss the case outright, A.243, after framing the dispute as a garden-variety and

non-prospective, A.202, 230.[14] It then commented that it should be brought in a traditional posture, A.202, 243, adding that there was "no need for Plaintiff to continue making the challenged statements" to know Mrs. Trump considered them defamatory—regardless of the public interests issues inherent in this comment. A.231. Such reasoning confirms its error. The propriety of Mr. Wolff's action under both state substantive and procedural law bears upon the comity and finality analysis. Any doubt about the DJA's fit therefore weighed toward remand—not dismissal. This action, no matter how it is sliced, belongs in New York Supreme Court.

---

[14] This action is prospective, despite the district court's determination. A.230. For example, Mrs. Trump's parallel § 770.01 notices already le*d The Daily Beas*t and *Spotif*y to remove Mr. Wolff's content, chilling his future reporting. A.32, 61.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant Wolff respectfully requests that the judgment of the district court be reversed, and the case remanded with instructions to remand to New York Supreme Court.

Dated: October 30, 2026
New York, New York

Respectfully Submitted,

**MILLER KORZENIK RAYMAN LLP**

*By: /s/ David S. Korzenik*
David S. Korzenik
1501 Broadway, Suite 2015
New York, New York 10036

*Attorneys for Appellant Michael Wolff*

## CERTIFICATE OF COMPLIANCE

I certify pursuant to Fed. R. App. P. 32(a) and Local Rule 32(a)(4)(A) that the foregoing brief for Appellant Michael Wolff is proportionately spaced, has a typeface of 14 points or more and contains 8,280 words.

Dated: October 30, 2026

*/s/ David S. Korzenik*
David S. Korzenik